1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JEREMY PINSON, et al.,

　　　　　　Plaintiffs,

　　　v.

J. FRISK,

　　　　　　Defendant.

Case No.　13-cv-05502-VC

**ORDER DENYING PLAINTIFFS'
MOTION TO DECLARE 28 U.S.C.
§ 1915(G) UNCONSTITUTIONAL;
REVOKING PLAINTIFFS' IN FORMA
PAUPERIS STATUS; AND DISMISSING
COMPLAINT**

Re: Dkt. No. 75

　　　　Plaintiffs Jeremy Pinson and Mikeal Stine, inmates at the United States Penitentiary in Florence, Colorado ("ADX Florence"), filed a civil rights action pursuant to 42 U.S.C. § 1983 alleging the violation of their constitutional rights by employees at Pelican Bay State Prison in California.  On March 17, 2014, the Court granted the plaintiffs' motions for leave to proceed *in forma pauperis* ("IFP").  On April 14, 2014, the Court issued an Order of Partial Service on Defendant J. Frisk.  Since then, the plaintiffs have filed many motions that are duplicative or frivolous.  For instance, the plaintiffs have filed a motion for the Court to serve subpoenas on three federal agencies located in Washington, D.C., *see* Dkt. No. 57, an emergency motion for a tele-video conference, see Dkt. No. 70 and numerous discovery motions.  *See* Dkt. Nos. 56, 62, 65-67 and 73.

　　　　On September 18, 2014, the Court issued an order directing the parties to file briefs on whether the plaintiffs were barred from proceeding IFP pursuant to 28 U.S.C. § 1915(g).  This issue has been fully briefed by the parties.  The plaintiffs also move for a declaration that 28 U.S.C. § 1915(g) is unconstitutional, which Frisk has opposed.  For the reasons discussed below, the Court denies the motion to declare § 1915(g) unconstitutional, finds that the plaintiffs

are three-strikes litigants within the meaning of § 1915(g) and dismisses the complaint without prejudice to each plaintiff filing a separate complaint with the full filing fee.

## DISCUSSION

### I. Standard Under 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act of 1995 provides that a prisoner may not bring a civil action IFP under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

For purposes of a dismissal that may be counted under § 1915(g), the phrase "fails to state a claim on which relief may be granted" parallels the language of Federal Rule of Civil Procedure 12(b)(6) and carries the same interpretation, the word "frivolous" refers to a case that is "of little weight or importance: having no basis in law or fact," and the word "malicious" refers to a case "filed with the 'intention or desire to harm another.'" *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (citation omitted). If a plaintiff has three strikes under § 1915(g), he may still proceed IFP if he can show that he was in imminent danger at the time of filing his complaint. *Andrews v. Cervantes*, 493 F.3d 1047, 1053 (9th Cir. 2007). A dismissal under § 1915(g) means that a prisoner cannot proceed with his action as a pauper under § 1915(g), but he still may pursue his claims if he pays the full filing fee at the outset of the action. *Tierney v. Kupers*, 128 F.3d 1310, 1311 (9th Cir. 1997); *Adepegba v. Hammons*, 103 F.3d 383, 388 (5th Cir. 1996).

### II. Motion to Declare § 1915(g) Unconstitutional

The plaintiffs argue that § 1915(g) is unconstitutional because it "creates an insurmountable barrier blocking access to the courts for prisoners with three strikes." Although they acknowledge that the imminent danger exception provides a safety valve that allows relief for some inmates, they maintain that many prisoners who do not have the funds to prepay the filing fee will "find the doors to justice effectively bolted." Plaintiffs cite cases from other circuits and districts where the courts have expressed doubts about the constitutionality of § 1915(g), but they

United States District Court
Northern District of California

1   fail to cite any cases holding this statue to be unconstitutional.

2          The Ninth Circuit has held that § 1915(g) is facially constitutional.  *See Rodriguez v. Cook*,

3   169 F.3d 1176, 1181 (9th Cir. 1999); *Andrews*, 398 F.3d at 1123.  In *Rodriguez*, the court held that

4   § 1915(g) does not violate due process, equal protection, the separation of powers or, where a

5   fundamental interest is not at stake, the right to access the courts.  *Id.* at 1179.  Several other courts

6   of appeals have upheld § 1915(g) against various constitutional challenges, including First

7   Amendment challenges involving access to the courts.  *See White v. Colorado*, 157 F.3d 1226,

8   1232-1233 (10th Cir. 1998) (no violation of right to access courts because § 1915(g) does not

9   prevent a prisoner with three strikes from filing civil actions, it merely prohibits him from

10  enjoying IFP status, which is a privilege, not a right); *Rivera v. Allin*, 144 F.3d 719, 723-24 (11th

11  Cir. 1998) (no violation of right to access the courts), *abrogated on other grounds by Jones v.

12  Bock*, 549 U.S. 199 (2007); *Carson v. Johnson*, 112 F.3d 818, 821 (5th Cir. 1997) (no violation of

13  due process because § 1915(g) only denies IFP status, it does not prohibit prisoners from filing

14  lawsuits).

15         In his reply, Stine argues that § 1915(g) is unconstitutional as applied to him because:

16  (1) his family is deceased; (2) his prison does not allow him to work, so he cannot save money to

17  pay the filing fee; and (3) any money that is sent to him is automatically applied to his criminal

18  restitution fine.  Stine's unsworn allegations do not support a finding that he is different from

19  many other inmates without family, with fines to pay and who cannot work.  Furthermore, Stine's

20  claim that he is unable to pay the filing fee is contradicted by the court's finding in *Stine v.

21  Lappin*, 2009 WL 2848849, *3 (D. Col. Sept. 1, 2009), that, despite's Stine's inability to proceed

22  IFP as a three-strikes litigant under 28 U.S.C. § 1915(g), he has "enlisted the financial aid of other

23  inmates to allow him to proceed undaunted" in filing lawsuits.

24         Therefore, the motion to declare the three strikes provision unconstitutional, either facially

25  or as applied, is denied.

26  **III. Application of Section 1915(g) to Plaintiffs**

27         The plaintiffs do not dispute that they each have at least three strikes within the meaning of

28  § 1915(g).  Nor could they, in light of the Court's September 28, 2014 Order citing the findings of

other courts that each plaintiff has filed three or more frivolous lawsuits that have barred them from proceeding IFP unless they satisfy the imminent danger exception. *See e.g.*, *Pinson v. Samuels*, 761 F.3d 1, 2-3, (D.C. Cir. 2014) ("Because Pinson has run afoul of the Prison Litigation Reform Act's three-strikes provision and has failed to demonstrate that he qualifies for the imminent danger exception, we deny his motion to proceed *in forma pauperis*."); *Pinson v. Armigo*, 2014 WL 1034992, *1 (D. Col. Mar. 18, 2014) ("Mr. Pinson, on three or more prior occasions, has brought an action that was dismissed on the grounds that it was frivolous.") (listing prior three-strikes cases); *Pinson v. Casden*, 2013 WL 3216144, *1 (D. Col. June 25, 2013) (listing prior three-strikes cases); *see also*, *Stine v. Davis*, 2010 WL 3019950, *1 (D. Col. July 28, 2010) ("Mr. Stine has filed more than three actions in a court of the United States while he was incarcerated or detained in any facility that were dismissed as frivolous or for failure to state a claim.") (listing prior three-strikes cases); *Stine v. Lappin*, 2009 WL 2848849, *3 (D. Col. Sept. 1, 2009) ("Plaintiff already has at least four strikes against him pursuant to 28 U.S.C. § 1915(g)").

The "imminent danger" exception "applies if the complaint makes a plausible allegation that the prisoner faced imminent physical danger at the time of filing" the complaint. *Andrews*, 493 F.3d at 1055. The complaint is the focus of the inquiry. *Id.*; *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir. 2001) (en banc). But courts may reject allegations that are "overly speculative and fanciful." *Andrews*, 493 F.3d at 1056-57, n.11. The plaintiff must show a nexus between the imminent danger alleged in the complaint and the claims it asserts. *Pettus v. Morgenthau*, 554 F.3d 293, 299 (2nd Cir. 2009). This means that the plaintiff must show that: (1) the imminent danger of serious physical injury is fairly traceable to the unlawful conduct asserted in the complaint; and (2) a favorable judicial outcome would redress that injury. *Id.*

The plaintiffs filed their original complaint on November 27, 2013, and the operative complaint, the Corrected Amended Complaint ("CAC"), on February 18, 2014. *See* Dkt. Nos. 1 and 26. To show they were in imminent danger when they filed the CAC, the plaintiffs point to the allegation that "Frisk told several Pelican Bay SHU inmates in 2012 that all the plaintiffs were snitches—this info was communicated to members of the Aryan Brotherhood and Mexican Mafia that resulted in attacks on Pinson and Stine by armed inmates at ADX Florence who continue to

4

United States District Court
Northern District of California

1  threaten to kill them both, are housed near them, and are still armed." Dkt. No. 26 at 3.

2      The Court finds that this allegation is insufficient to show the imminent danger is fairly

3  traceable to the alleged unlawful conduct or that a favorable outcome will redress the threat of

4  danger.  Although the plaintiffs assert that, in late 2013 or early 2014, they were in imminent

5  danger from inmates at ADX Florence because Frisk told inmates at Pelican Bay that they were

6  snitches, this is not the first time the plaintiffs have claimed imminent danger based on a

7  "snitches" allegation.  In 2007, when Pinson was incarcerated in Oklahoma, he alleged that he had

8  been identified as a "snitch." *See Pinson v. Watkins*, 2007 WL 1394146, *3 (W.D Okla. May 9,

9  2007).  In 2011, when Pinson was incarcerated at ADX Florence, he invoked the imminent danger

10  exception to § 1915(g) based on the allegation that other inmates housed in close proximity would

11  attack him because he had been labelled an informant.  *See Pinson v. Federal Bureau of Prisons*,

12  2011 WL 6118715, *1-2 (D. Col. Dec. 8, 2011).  The court found that Pinson was not in imminent

13  danger based on the fact that Pinson was housed in a single-occupancy cell and that security

14  measures were taken when he was transported to and from his cell.  *Id.* at *2.  In 2011, when Stine

15  was incarcerated at ADX Florence, he invoked the imminent danger exclusion by alleging that he

16  was an ex-member of the Aryan Brotherhood and, because he had cooperated with law

17  enforcement against its members, he feared he would be attacked or killed if he was moved to the

18  general population.  *See Stine v. Federal Bureau of Prisons*, 2010 WL 3276196, *2 (D. Col. Aug.

19  17, 2010).  The court held that Stine's allegation did not show that he was in imminent danger of

20  serious physical injury, relying, in part, on findings that: (1) ADX Florence is the most secure

21  facility in the Bureau of Prisons;  (2) inmates in the General Population or Special Housing Units

22  are separated by a barred grille and if interaction occurs outside of a cell, the inmate is restrained;

23  (3) at no time are inmates allowed to move within the institution without some form of supervision

24  and they generally remain in their cells twenty-one to twenty-three hour per day; (4) recreation is

25  conducted in separate areas that are separated from another inmate's recreation area by heavy-duty

26  fencing; and (5) meals, programming and showering take place in an inmate's cell.  *Id.*  In 2014,

27  Pinson and Stine and other inmates invoked the imminent danger exclusion from § 1915(g) by

28  alleging they were in danger from assault by other inmates.  *See Hobbs v. Doe*, 2014 WL 229343,

United States District Court
Northern District of California

*3  (E.D.N.C. Jan. 21, 2014).  Citing other cases in which Pinson and Stine had alleged they were at risk of harm from other inmates at ADX Florence, the court held that the allegations failed to show they were in imminent danger.  *Id.*  In *Pinson v. Armijo*, 2014 WL 1034992, *2 (D. Col. Mar. 18, 2014), the court listed other cases in which the plaintiffs alleged they were in danger from other inmates because they had been labelled snitches: (1) *Pinson v. Unknown Party*, No. 13-cv-02059-DCB-PSOT (D. Ariz. Filed Dec. 6, 2013) (alleged inmates at federal prison in Tucson, Arizona, were told Pinson is a snitch; court found no imminent danger under § 1915(g)); (2) *Pinson, et al., v. John Does*, No. 13-cv-013077-NMG (D. Ma. Filed Nov. 25, 2013) (Pinson and Stine alleged an investigative agent in Maryland labeled them snitches); (3) *Pinson, et al., v. John Doe, et al.*, No. 13-cv-00134-ART (E.D. Ky. Filed Nov. 20, 2013) (alleged special investigative agent at USP Inez told inmate that Pinson and Stine are snitches; as a result they have been assaulted and threatened); and (4) *Pinson, et al., v. Doe, et al.*, No. 13-cv-01821-MJS (E.D. Cal. Filed Nov. 12, 2013) (alleged that defendants told inmate at USP Atwater that Pinson and Stine are snitches; as a result the Mexican Mafia has threated to kill Stine and Pinson).  *Id.*

This list of cases with the same allegations made in this case, that the plaintiffs are in danger from inmates because those inmates were told by prison staff that the plaintiffs are snitches, warrants a conclusion that the allegations in this complaint are fanciful.

And even if the allegation about Frisk were true, it does not follow that the plaintiffs face imminent danger.  Because the plaintiffs allege that the "snitch" rumors come from so many different sources, it is not possible to trace the imminent danger in late 2013 or early 2014, when the plaintiffs filed their complaint and CAC, to the "snitch" remark allegedly made by Frisk in 2012, at least one year before the complaint was filed.  Furthermore, even if the plaintiffs obtained a favorable outcome in this case, it would not prevent the alleged imminent danger in light of the fact that the Court does not have jurisdiction over the Bureau of Prisons or officials at ADX Florence because they are not parties to this action and, therefore, the Court cannot direct them to take action to protect the plaintiffs.  *See* Dkt. No. 45 at 2-3, Order Denying Plaintiff's Motion for TRO and Preliminary Injunction (explaining Court lacks jurisdiction to order Bureau of Prisons and officials at ADX Florence to protect the plaintiffs from inmates' attacks by housing the

1  plaintiffs in a unit with other protective custody inmates).

2     Furthermore, this Court relies on the findings of the many courts listed above, that the

3  allegations that the plaintiffs are in danger of being attacked by inmates at ADX Florence does not

4  show imminent danger because ADX Florence is one of the most secure institutions in the federal

5  penal system.  *See Ransom v. Hubbard*, 2012 WL 3704760, *2 (E.D. Cal. Aug. 24, 2012) (denying

6  inmate's claim of imminent danger because the same claims he made in other cases were rejected

7  as qualifying for imminent danger).

8     For all of these reasons, the Court finds that the allegations in the complaint are

9  insufficient to show that the plaintiffs were in imminent danger at the time the complaint was

10  filed.  The complaint is dismissed without prejudice to the plaintiffs paying the full filing fee.

11  **IV. Plaintiff's History of Abusive Litigation Warrants Revocation of IFP Status**

12     Even where the PLRA's three-strikes provision does not apply, a court has the discretionary

13  power to revoke the IFP status of an "abusive filer," to preserve its own resources and those of the

14  defendants.  *Visser v. Supreme Court of Cal.*, 919 F.2d 113, 114 (9th Cir. 1990)  (citing *In re*

15  *McDonald*, 489 U.S. 180, 184 (1989)).  In fact, the Supreme Court has stated that courts have "a duty

16  to deny IFP status to those individuals who have abused the system."  *In re Sindram*, 498 U.S. 177,

17  180 (1991) (per curiam).  The Court explained:

18
19      The goal of fairly dispensing justice, however, is compromised
   when the Court is forced to devote its limited resources to the
   processing of repetitious and frivolous requests.  Pro se petitions
20  have a greater capacity than most to disrupt the fair allocation of
   judicial resources because they are not subject to the financial
21  considerations—filing fees and attorney's fees—that deter other
   litigants from filing frivolous petitions.

22  *Id.* at 178.  To determine whether a plaintiff's litigation history demonstrates an abuse of the IFP

23  privilege, courts should examine the number, content, frequency, and disposition of the plaintiff's

24  previous filings.  *Butler v. Dep't of Justice*, 492 F.3d 440, 445-46 (D.C. Cir. 2007).

25     The plaintiffs' litigation history shows a pattern of abusive filings in federal courts.  As one

26  district court stated:

27      Mr. Pinson is no stranger to this Court and to at least nineteen other
   federal district courts.  Since November 2007, Mr. Pinson has filed
28  forty-three cases in this Court; and since September 2005, he has

filed at least 136 cases in various other federal district courts, along with 64 appeals in seven different circuits.  Since June 13, 2013, when he filed this case, Mr. Pinson has initiated in this Court five additional prisoner complaints and seven habeas actions. . . . Also, since June 13, 2013, Mr. Pinson has initiated twelve actions in several other federal district courts. . . . Mr. Pinson's propensity to engage in abusive litigation conduct and to present unbelievable claims was established in Case No. 13-cv-0134-RM-BNB, when Judge Moore found adequate support for this characterization based on the frequency of Mr. Pinson's filings and the testimony at the hearing before Magistrate Judge Boland on January 14, 2014.

*Pinson v. Armigo*, 2014 WL 1034992, *2-3 (D. Col. Mar. 18, 2014).

In *Pinson v. Kasdon*, 2014 WL 1715133, *1-3 (D. Col. May 1, 2014), the court imposed a filing restriction on Pinson after finding that his "overall filing practices and . . . his overall pattern of conduct is that of an abusive filer."

The Tenth Circuit recently upheld a second filing restriction imposed against Pinson for cases he files under 28 U.S.C. § 2241.  *Pinson v. Berkebile*, __ Fed. Appx. __, 2015 WL 408211, *3-4 (10th Cir. 2015).  In its opening paragraph, the court stated, "Jeremy Pinson likes to litigate. He is a frequent filer who often abuses the availability of the 'Great Writ.'"  *Id.* at *1.  The court found that the two filing restrictions imposed in *Kasdon* and in *Berkebile* were proper in light of Pinson's abusive litigation history, stating, "We applaud and affirm the imposition of filing restrictions."  *Id.* at *4.

In *Stine v. Lappin*, cited above, the court imposed filing restrictions against Stine because his inability to proceed IFP pursuant to 1915(g) did not deter him from filing a large number of frivolous lawsuits, many involving pleadings that were vexatious, frivolous, malicious and without legal justification.  *Lappin*, 2009 WL 2848849, at *19.  The court found that Stine, "has inappropriately used the federal court system as a means to express his displeasure in an abusive, malicious and unconscionable manner. . . . Because it is clear that Plaintiff finds unfairness with every action taken against him, whether real or imaginary, and does not show any signs of deviating from his campaign of harassment, justice requires this District to follow through with the warning to impose restrictions on his ability to file future federal lawsuits."  *Id.* (internal citations omitted).

Given the large number and frequency of the plaintiffs' filings, which are, for the most

1    part, frivolous and sometimes malicious, the plaintiffs fall within the Court's discretionary power

2    to revoke their IFP status to preserve its own resources and that of the defendants.  For this reason

3    also, the plaintiffs' IFP status is revoked and this case is dismissed.

4           Citing a Sixth Circuit case, the plaintiffs request that, if their IFP status is revoked, they be

5    allowed each to pay one half the filing fee.  However, the PLRA states, "if a prisoner brings a civil

6    action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of

7    a filing fee." 28 U.S.C. § 1915((b)(1).  This provision expressly requires each prisoner to pay the

8    full fee.  Although the Ninth Circuit has not yet addressed this issue, other circuits and at least one

9    court in this district have held the full filing fee is required from each prisoner-plaintiff.  *See*

10   *Hubbard v. Haley*, 262 F.3d 1194, 1196-97 (11th Cir. 2001); *Boribourne v. Berge*, 391 F.3d 852,

11   855-56 (7th Cir. 2004); *Treglia v. Kernan*, 2013 WL 1502157, *1 (N.D. Cal. Apr. 11, 2013).

12   Therefore, the plaintiffs' request to split the filing fee is denied.  Furthermore, this issue is moot

13   because, if the plaintiffs re-file, they shall do so in separate complaints.  *See* Fed. R. Civ. P. 21

14   (courts may, at any time, on just terms, add or drop a party); *Davis v. Mason County*, 927 F.2d

15   1473, 1479 (9th Cir. 1991) (courts have broad discretion regarding severance); *Mizerak v.*

16   *Kendricks*, 2008 WL 4809866, *1 (E.D. Cal. Nov. 3, 2008) (actions brought by multiple inmate

17   plaintiffs proceeding pro se present procedural problems that can cause delay and confusion,

18   primarily due to the frequent changes in address that occur upon the transfer of inmates to other

19   institutions and the difficulties faced by inmates who attempt to communicate with each other).

**CONCLUSION**

20          Based on the foregoing, the Court orders as follows:

21          1. The plaintiffs' motion to declare § 1915(g) unconstitutional is denied.  Dkt. No. 75.

22          2. The Court's orders granting the plaintiffs' IFP status are vacated, Dkt. Nos. 28 and 29,

23   and their IFP status is revoked.

24          3. This case is dismissed without prejudice to the plaintiffs filing separate complaints each

25   paying the full $400 filing fee.

26          4. The Court certifies that any appeal taken from this order is not taken in good faith.  *See*

27   28 U.S.C. § 1915(a)(3).

United States District Court
Northern District of California

9

        5. The Clerk of the Court shall terminate all pending motions, enter a separate judgment and close the file.

        **IT IS SO ORDERED**.

Dated: February 18, 2015

                                        _____
                                        VINCE CHHABRIA
                                        United States District Judge

United States District Court
Northern District of California